## PALMER et al. v. CITY OF NEW YORK.
## THE MOTT HAVEN.

District Court, S. D. New York.

Feb. 4, 1942.

---

44

Duncan & Mount, of New York City (Wilbur H. Hecht, of New York City, of counsel), for libelants.

William C. Chanler, Corp. Counsel, of New York City (George Seagrave Franklin, of New York City, of counsel), for City of New York.

RIFKIND, District Judge.

The ferryboat Motthaven, owned, operated and controlled by the City of New York, was backing out of its slip on the westerly side of North Brother Island bound for Riker's Island. It collided with and damaged carfloat No. NH58, one of a pair of carfloats in tow of the tug Transfer No. 15. The tug and floats were enroute from Jersey City, New Jersey, to libelant's float bridges at Oak Point, East River. The collision occurred at 5:55 P. M. in the clear daylight of March 28, 1938, at a point 300 feet off the slip and about 100 to 150 feet north of the slip.

The Motthaven was 99.4 feet long and 29.5 feet in beam; the carfloats were each 325 feet long and 40 feet in beam. The libelants charge the ferry boat with negligence. The ferryboat claims inevitable accident. The explanation of its Master is that in accordance with established practice he backed the ferryboat out of the slip, operating her from the inshore pilot house. When the inshore end of the ferryboat was about 100 feet clear of the slip, he signaled the engine to stop and then to proceed full ahead intending to shape her course north and around North Brother Island. The engine did not respond to the full ahead signal. The ferryboat was carried on her way and struck the carfloat at a point about 145 feet from its stern. He absolved the tug from any fault.

The ferryboat's engineer testified that the failure of the engine to respond could be explained only by the fouling of its propeller by a log. He jockeyed his engines back and forth several times, after which they responded and thereafter he had no further trouble. The Master further testified that he observed a log afloat alongside the ferryboat with dimensions of about 10x10 or 12x12. His testimony in part was as follows:

"Q. Do you know what was in the wheel? A. No, I don't know definitely what was in the wheel, but as we got clear and came around I noticed in the tide drift there was a piece of timber there. I should say it was something like a 12x12 or 10x10, and it looked as though it had been in the water a long time and it looked as though it had a couple of hacks, like you would with an axe. It looked as though it might have been damaged by the wheel.

"Q. You saw this right after—I will ask you this, when did you see this timber? A. It was after we got cleared and I turned around. That kept going up with the tide, the same as we did, and I had to go ahead and when I come around towards the car floats."

The force of this explanation is moderated by these facts: The logbook of the ferryboat contained no reference to the fouling of the propeller although the accident report submitted by the Master to his employers did contain the statement that the engineer had notified him that "something" was in the wheel. No repairs were made to the propeller. According to the testimony of the engineer of the ferryboat, only 10 to 20 seconds elapsed between the receipt of the signal to stop and the collision. It does not appear that the ferryboat had a lookout on its offshore end, but it does appear that the Master of the ferryboat had the carfloats under observation at all times.

Under these circumstances, has the respondent sustained the burden of explaining the collision by showing an inevitable accident? According to the authorities the burden of proving inevitable accident is heavily upon the party asserting that defense, The Anna C. Minch, 2 Cir., 1921, 271 F. 192, and that a finding of inevitable

accident is "not to be lightly arrived at", The Bayonne, 2 Cir., 1914, 213 F. 216.

[redacted] These precepts are presumably to be regarded as cautions since in the last analysis the issue of inevitable accident presents a question of fact. The test is, could the collision have been prevented by the exercise of ordinary care, caution and maritime skill?

The explanation offered by respondent is that the collision was occasioned by the fouling of the propeller and that the exercise of due care, caution and maritime skill could not have avoided it. This explanation has not been sufficiently established by the proof. The log in the propeller is largely the product of inference and not of visual observation. No one actually saw the log in the propeller. Although the boat has been drydocked since the collision, respondent offered no proof of any injury to the propeller blade, not even the presence of a nick, which, according to respondent's engineer, would have been inflicted on the propeller blade had it caught on a log. The engineer testified as follows:

"Q. You did not get out and look to see if there was anything in the wheel, did you? A. Oh, no. It was at least every bit of 10 or 15 feet below the water line.

"Q. You have no personal knowledge; you did not see the wheel yourself? A. I did not see that. The only knowledge I had is my engines stopped dead, and nothing will stop the engine unless there is a log in it or the machinery is defective."

By subsequent testimony the engineer eliminated the possibility of defect in the machinery. Nevertheless the presence of the log is still largely a matter of conjecture.

The facts are strikingly similar to those discussed by Judge Augustus Hand in The Clarence P. Howland, 2 Cir., 1926, 16 F.2d 25, 26: "There is no direct evidence of the presence of a stick of driftwood in the propeller, and we do not regard the testimony of the interested witnesses as of sufficient weight to justify what is at best only claimant's theory of the cause of the collision. The only witness for the claimant who could personally have known anything about the jamming of the propeller was the engineer, who, in answer to the question 'You do not know whether it got jammed?' had no more to say than, 'Well, I pretty near know'".

But even if I could accept this speculative log as fact I would still not be free to absolve the respondent from fault. According to the engineer the collision occurred between 10 and 20 seconds after he received the stop signal. It is at least questionable whether even if the engines had responded promptly, the ferryboat's headway was not sufficient to bring her into collision with the carfloats. It is to be observed that with her engines stopped she travelled 100 feet in the 10 to 20 second interval. The Master of the ferryboat testified that he was aware of the carfloats while he was still in the slip. It is clear that had he waited about a minute in the slip or checked the speed of the ferryboat sooner in view of the proximity of the 325 foot long carfloats, the collision would not have occurred.

[redacted] It appears, therefore, that respondent has failed to prove an inevitable accident, in that its explanation of the cause of the collision has not been established and in that it was guilty of negligence which contributed to the collision. The libelants are, therefore, entitled to a decree against the respondent for their damages with a reference to a commissioner to compute the amount thereof.